MATTER OF KJELDAAS

In Deportation Proceedings

A-19368707

*Decided by Board August 18, 1977*

(1) Respondent is the principal and a teacher in a school administered by a religious group known as the Jesus People. She began the school at their request in the summer of 1975 so they might educate the children of the community in that religious atmosphere.

(2) Respondent sought adjustment of status under section 245 of the Immigration and Nationality Act as a nonpreference immigrant who had satisfied the labor certification requirement of section 212(a)(14) of the Act by virtue of the inclusion of her occupation in Group III of Schedule A of the Labor Department. (20 C.F.R. 656.10 and 20 C.F.R. 656.22).

(3) Respondent's occupation is within Schedule A, Group III as revised effective February 18, 1977, because she is seeking admission to perform a religious occupation and she is a person with a religious commitment seeking admission to work for a nonprofit religious organization. She has worked for her organization full time since 1974. She will be principally engaged in working for the organization and intends to work for the organization 100% of her working time. It is the order of the Board that her petition for adjustment of status under section 245 of the Act be granted subject to appropriate and requisite clearances by the Service.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant exchange visitor—remained longer than permitted

ON BEHALF OF RESPONDENT:
Victor L. Anfuso, Jr., Esquire
575 Lexington Avenue
New York, New York 10022

ON BEHALF OF SERVICE:
Mary Jo Grotenrath
Appellate Trial Attorney

BY: Milhollan, Chairman; Wilson, Appleman, and Maguire, Board Members

The respondent appeals from the immigration judge's denial of her application for adjustment of status in a decision rendered on March 9, 1976, in which he found her deportable, and granted to her the privilege of voluntary departure. The appeal will be sustained.

The respondent is a single female alien, a native and citizen of Norway, who last entered the United States on August 15, 1974, at which time she was admitted as a nonimmigrant exchange visitor for a period until June 30, 1975. She concedes deportability for having remained thereafter.

The issue posed is whether the respondent is inadmissible to the United States and therefore ineligible for adjustment of status, because of the provisions of section 212(a)(14) of the Act. That section renders inadmissible aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, unless they have obtained a labor certificate from the Secretary of Labor. The respondent claims that she satisfies the labor certification requirement as a person whose occupation is listed on Schedule "A." Schedule "A" is a list of occupations for which the Secretary of Labor has issued a blanket certification, by regulation, (presently numbered 20 C.F.R. 656.10). The immigration judge found that the respondent had not established that her occupation was listed on Schedule "A," (then numbered 20 C.F.R. 60.7). The regulation was amended and renumbered during the pendency of this appeal. We find that the record establishes that the respondent's occupation is one listed on Schedule "A," as recently amended.

An alien in the United States who applies for certification on the basis of an occupation which is listed on Schedule "A" files the application with the Immigration and Naturalization Service, 29 C.F.R. 656.22(a), [formerly numbered 29 C.F.R. 60.3(a)]. The respondent apparently filed such an application as part of her application for adjustment of status. The District Director denied the application on November 20, 1975, on the basis that her occupation did not meet the qualification for inclusion on Schedule "A" that she be engaged: "principally (more than 50% of [her] working time)" in duties related to religious objectives. The immigration judge, before whom she renewed her application, reached the same conclusion in denying her application.

Group III of Schedule "A," which the respondent claimed covered her occupation, then included:

> (c) Any other person seeking admission to the United States to perform duties related to the nonprofit operation of a religious organization (1) if the duties which he will perform involve special skills, training, and experience which the alien possesses and which are related to the religious objectives of the organization and (2) if he intends to be engaged principally (more than 50 percent of his working time) in such duties. 29 C.F.R. 60.7 Schedule A, Group III.

The respondent has been serving as both principal and teacher of a school administered by a religious organization called the Jesus People. The organization requested her to create a school program in order that it might educate the children of its community in its own atmosphere. She did so during the summer of 1975 and has been teaching in and administering the program since then.

During the course of a school day the respondent teaches some religion, but spends five out of six class hours per day teaching secular subjects (a requirement of state law). It was because the respondent's teaching involves primarily secular subjects that the District Director

and immigration judge found that the respondent's duties were not "related to the *religious objectives*" of the religious organization more than 50% of the time, as required by the terms of Schedule "A." The immigration judge rejected her contention that because religious aspects seeped into and permeated all of her teaching, her duties qualified notwithstanding the secular subject matter of most of her teaching.

The recent amendment to Schedule "A" which became effective February 18, 1977, was accompanied by the following explanation:

10. Some commentors [sic] objected to the exclusion from Schedule A, Group III, of persons with religious commitments who work in nonreligious occupations such as nursing and teaching. Group III has been revised to include persons with a religious commitment who will work for non-profit religious organizations. 42 Fed. Reg. 3440 (January 18, 1977).

The following language was adopted and is currently in force:

20 C.F.R. Section 656.10:

The Administrator, United States Employment Service, (Administrator) has determined that there are not sufficient United States workers who are able, willing, qualified and available for the occupations listed below on Schedule A and that the wages and working conditions of the United States workers similarly employed will not be adversely affected by the employment of aliens in Schedule A occupations:

## SCHEDULE A

(c) Group III:

(1) Aliens who seek admission to the United States in order to perform a religious occupation, such as the preaching or teaching of religion; and

(2) Aliens with a religious commitment who seek admission into the United States in order to work for a nonprofit religious organization

20 C.F.R. Section 656.22:

(e) Aliens seeking a labor certification under Group III of Schedule A shall file as part of their labor certification applications documentary evidence showing that they have been primarily engaged in the regilious [sic] occupation or in working for the non-profit religious organization for the previous two years, and they will be principally engaged (more than 50 percent of working time) in the United States in performing the religious occupation or working for the non-profit religious organization.

The respondent (through counsel) contended at oral argument that her occupation clearly qualifies for Schedule "A" under the amended version of the regulation. The Service conceded that the respondent had made out a prima facie case of eligibility for a labor certification under the new regulations. On the particular facts of this case, we agree that she has established that she is entitled to a labor certification pursuant to Schedule "A."

It should be noted that there is no problem in this case concerning visa availability. The respondent seeks adjustment of status in the nonpreference category, for which a visa number was available at the time

she filed, as required by section 245(a)(3) of the Act. She is not seeking visa availability as a special immigrant under the category for ministers. Persons who seek to enter the United States "solely for the purpose of carrying on the vocation of minister of a religious organization" are, with certain qualifications, entitled to the classification of "special immigrant" for immigration purposes, section 101(a)(27)(C). Classified as such they are exempt from the numerical limitations, section 201(a) of the Act. They are also not subject to the labor certification requirement by the terms of section 212(a)(14). The language of the present Act according special treatment to ministers is basically unchanged from that contained in previous acts dating back to the Immigration Act of May 26, 1924, as amended. Its requirements are separate from and unrelated to the regulations governing labor certifications.

The respondent is not claiming exemption from the numerical limitations. A visa number is available to her. Neither is she claiming exemption from the labor certification requirement. She seeks rather to establish that she has satisfied the labor certification requirement, by virtue of the blanket labor certificate which has been granted to persons who seek admission to perform a religious occupation, and to persons with a religious commitment who seek admission in order to work for a nonprofit religious organization. The respondent contends that her occupation fits within either category.

From the record before us we have determined that the respondent clearly fits within the category of person with a religious commitment who seeks admission in order to work for a nonprofit religious organization, and that she meets all the qualifications of 20 C.F.R. 656.22(e). Having made this determination, it is not necessary for us to discuss or determine whether her occupation is a religious one, and we shall not do so.

The prior Schedule "A" contained a category for persons with a religious commitment, and gave examples of such persons. It included:

(b) Any person of any religious denomination having a religious commitment, such as a Monk, Nun, Brother, Missionary, and others, who is seeking admission to the United States to perform the duties required of him by virtue of such commitment. 29 C.F.R. 60.7 Schedule A Group III (b) in effect until February 18, 1977.

While the present regulation does not define the term "religious commitment"—and we shall not attempt to do so here—it is clear that this respondent qualifies. The note accompanying the change in Schedule "A" (comment 10 quoted above) specifically mentioned that the language adopted was chosen in order that nonreligious teachers might be able to bring themselves within its terms. The respondent has done post graduate work at the Norwegian Teachers Training College for Religious Studies and Education where she pursued a program in "The

Christian Religion and Other Religions" with a supplementary course in "Theory and Practice of Christian Education." Prior to her present employment she taught at the Masters School in West Simsbury, Connecticut, which she described as a Christian School at which she taught from the perspective that all her teaching was in furtherance of her faith in God (Tr. p. 12). Her testimony indicates a religious motivation on her part in joining the Jesus People and organizing a school for their children (Tr. p. 13). Further testimony indicates that she considers her occupation to be a religious calling and that her religious perspective is involved in her performance of her occupation (Tr. pp. 14–18, 40–47).

The record also contains evidence that the respondent meets the other qualifications required by the regulations to fit within this category. She has been primarily engaged in working for the religious organization for the previous two years; she has been working for them on a full-time basis since the summer of 1974. She has established that she will be principally engaged (more than 50% of working time) in working for the organization. She intends to work for the organization 100% of her working time. The difference from the prior terms of Schedule "A" is that presently it is sufficient that she intend to work for the organization for more than 50% of her time, whereas previously, (at least as interpreted below) the duties performed had to be ones which related to the "religious objectives" of the organization more than 50% of working time.

In view of the fact that the record already contains sufficient evidence to establish that the respondent satisfies the new terms of Schedule "A," it is not necessary to remand the case to the immigration judge for further consideration. We shall order that her application for adjustment of status be granted.

ORDER: The appeal is sustained, and the respondent's application for adjustment of status under section 245 of the Immigration and Nationality Act, as amended, is hereby granted, conditioned upon appropriate and requisite clearances by the Service.